UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND R. LESSL,

       Plaintiff,

v.                                                                    Case No. 11-cv-10871
                                                                     Paul D. Borman
                                                                     United States District Judge

CITIMORTGAGE, INC.,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS and DISMISSING THE ACTION

This is a mortgage foreclosure case. Raymond R. Lessl ("Plaintiff") filed the Complaint in this matter on February 3, 2011, in the 16th Circuit Court in Macomb County, Michigan. On March 4, 2011, CitiMortgage, Inc. ("Defendant") removed the case to this Court on the basis of federal question and diversity jurisdiction. (Dkt. No. 1.)

On March 11, 2011, Defendant filed a Motion to Dismiss. (Dkt. No. 4.) Plaintiff responded on April 11, 2011. (Dkt. No. 7.) Defendant filed a Reply on May 2, 2011. (Dkt. No. 8.) The Court held a hearing on August 31, 2011.

For the reasons stated below, the Court will grant Defendant's Motion to Dismiss.

## II. BACKGROUND

The facts alleged in the Complaint are accepted as true for purposes of this motion. *Aschcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). Plaintiff's factual allegations are as

follows.

## A.  Plaintiff's Mortgage Loan

On December 1, 2006, Plaintiff obtained a $188,693 mortgage loan from ABN AMRO

Mortgage Group, Inc., for the purchase of property located at 98 North Gratiot Avenue in Mount

Clemens, Michigan.  Plaintiff's monthly payment under the loan was $1,332.99, which included

$155.79 for a property tax escrow.

Plaintiff was laid off from his job in April 2008.  Plaintiff was nevertheless able to make

all of his mortgage payments on time from February 2007 to April 2009.  Beginning in May

2009, Plaintiff began disputing the amount of his monthly mortgage payments.

## B.  Escrow Dispute

In 2007, Defendant failed to pay Plaintiff's property taxes, even though it had sufficient

funds in the escrow account.  In January 2009, Plaintiff was notified by the Macomb County

Treasurer that his property would be subject to forfeiture for delinquent taxes beginning March 1,

2009.  Defendant did pay the delinquent taxes in March 2009.

Beginning in January 2009, Plaintiff's property taxes increased by $44 per month.

Defendant, pursuant to its own escrow analysis, determined that in May 2009 Plaintiff's monthly

mortgage payment should be increased by $97.41 per month to cover the additional property

taxes.  Plaintiff's monthly mortgage payment thus increased to $1,430.40 in May 2009.  Plaintiff,

however, submitted his previous mortgage payment amount, $1,332.99.  Defendant credited this

payment as "Unapplied Funds," and Plaintiff incurred a late fee for the month of May.

On June 9, 2009, Plaintiff mailed a letter to Defendant disputing its escrow analysis and

its administration of Plaintiff's mortgage.  In the letter, Plaintiff stated that the May late fee was

"incorrect and will **NOT** be paid[,]" and also stated:

> \* I am notifying the City of Mt. Clemens and the County of Macomb to no longer accept tax payments on my behalf from CitiMortgage. As a result, I expect the following:
>
> > \* A **REFUND** of my entire escrow account ($886.82) so I can pay my taxes myself.
>
> > \* My new mortgage payment, effective July 1, will be $1177.20. (1332.99-155.79 =1177.20)

(Pl.'s Resp., Ex. 4, June 9, 2009 Letter) (emphasis in original). Plaintiff characterized

Defendant's increased escrow deduction of $97.41 as "absurd," and stated in closing:

> With the public's extremely negative perception of banks and mortgage companies, I'm confident the media in a depressed market like Detroit, will be appalled by your handling of my account and your total inability to service a good customer. If you have any interest in mitigating this public relations nightmare, contact me directly and resolve these issues immediately.
>
> Email, automated voicemails and form letters will be ignored.

(June 9, 2009 Letter.)

Defendant did not respond to Plaintiff's June 9, 2009 letter.

## C. Plaintiff's Default and Bankruptcy

On July 3, 2009, Plaintiff applied for hardship assistance online through Defendant's

website. Defendant acknowledged receipt of Plaintiff's request and stated that the "expected

timeframe needed to complete the review process is 30 days . . . ." (Pl.'s Resp., Ex. 5, July 10,

2009 Letter.) However, Defendant did not address Plaintiff's hardship assistance claim, and

Plaintiff filed for bankruptcy on October 22, 2009.[1] Plaintiff received a Chapter 7 discharge on

---

[1] Although it is not alleged, Plaintiff's mortgage loan apparently went into default around this time.

3

December 22, 2009.

Plaintiff alleges that he discussed his loan modification request with Defendant in December 2009, but that Defendant was waiting for an appraisal of Plaintiff's property before making a modification offer.  On March 5, 2010, Plaintiff and Defendant met regarding the loan modification request.  Defendant stated that Plaintiff's property had been appraised for $15,500.[2] Defendant then offered Plaintiff a loan modification with monthly payment of $1,062.50 and a 2.65 percent interest rate.  Plaintiff alleges that "[Defendant's] representative acknowledged that the loan modification offer was not reasonable given the fact that the estimated property value was $15,500 and admitted that if [Defendant] foreclosed on the Property, [it] would not recoup more than $15,500 upon resale of the Property."  (Compl. ¶ 39.)  Plaintiff declined Defendant's loan modification offer.

On March 3, 2010, two days prior to the meeting regarding loan modification, Defendant referred Plaintiff's mortgage to the law firm Trott & Trott, P.C., for foreclosure proceedings.  On March 5, 2010, Trott & Trott mailed a letter to Plaintiff offering another meeting to discuss loan modification.  Plaintiff requested the meeting.

Plaintiff met with Trott & Trott and Defendant's representatives on May 26, 2010. Defendant extended Plaintiff the same loan modification offer that it had made on March 5, 2010.  Plaintiff again refused the offer.

On June 17, 2010, Defendant sent Plaintiff a Making Home Affordable package pursuant to the Home Affordable Modification Program ("HAMP").  (Pl.'s Resp., Ex. 8, HAMP Request.)

---

[2]Plaintiff's bankruptcy petition valued his real property at $123,000, as of September 10, 2009.  (Chp. 7 Voluntary Pet. 6, *In re Lessl*, No. 09-68439, ECF No. 1.)

4

Plaintiff completed the requested documentation and continued discussion with Defendant to again review his mortgage loan for modification.

On June 22, 2010, Trott & Trott sent Plaintiff a letter stating that his loan modification request had been denied.  However, Trott & Trott advised Plaintiff to ignore this letter because he was continuing to work with Defendant on the loan modification.

Defendant continued to request information from Plaintiff regarding his loan modification.  On August 5, 2010, Plaintiff called Defendant's representative, Diane Eyler, who informed Plaintiff that his loan modification would not be reviewed and that Defendant was proceeding to a sheriff's sale on August 6, 2010.

Plaintiff alleges that "at no time was any notice of foreclosure posted to Plaintiff's property as required by Michigan's Foreclosure by Advertisement Statute."  (Compl. ¶ 56.)

Plaintiff purchased the property at the August 6, 2010 sheriff's sale for $199,284.58. (Pl.'s Resp., Ex. 11, Sheriff's Deed.)

Plaintiff filed the Complaint on February 4, 2011, alleging the following counts:

      (1) Set Aside Sheriff's Deed/Quiet Title;

      (2) Injunctive Relief;

      (3) Violation of RESPA;

      (4) Violation of HAMP;

      (5) Intentional Misrepresentation; and

      (6) Promissory Estoppel.

Defendant now moves to dismiss the Complaint.

## III. LEGAL STANDARD

Defendant has moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), which tests a complaint for failure "to state a claim upon which relief can be granted." Under Rule 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009). The complaint must "permit the court to infer more than a mere possibility of misconduct[.]" *Id.* at 1950.

## IV. ANALYSIS

### A. Plaintiff's Claims To Invalidate the Foreclosure Sale

Defendant first argues that Plaintiff lost standing to challenge the foreclosure sale after the expiration of the redemption period, when all right, title, and interest vested, and that his claim is barred by laches.

> Unless the premises described in [a foreclosure sale] deed shall be redeemed within the time limit for such redemption . . . such deed shall thereupon become operative, and shall vest in the grantee

6

> therein named, his heirs and assigns, all the right, title, and interest
> which the mortgagor had at the time of the execution of the
> mortgage, . . . and the record thereof shall thereafter, for all
> purposes be deemed a valid record of said deed . . .

Mich. Comp. Laws § 600.3236.

Courts have interpreted this language to mean a plaintiff cannot challenge a foreclosure sale after the passing of the redemption period. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right of redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and to the property were extinguished."); *see also Drew v. Kemp-Brooks*, --- F. Supp. 2d ----, 2011 WL 2936103 (E.D. Mich. 2011).

Plaintiff argues that he has standing pursuant to Mich. Comp. Laws § 600.5801, which provides as follows:

> No person may bring or maintain any action for the recovery or
> possession of any lands or make any entry upon any lands unless . .
> . he commences the action or makes the entry within the periods of
> time prescribed by this section.
>
> (1) **Defendant claiming title under fiduciary's deed or court-
> ordered sale.** When the defendant claims title to the land in
> question by or through some deed made upon the sale of the
> premises . . . by a sheriff upon a mortgage foreclosure sale the
> period of limitation is 5 years.

(Bold in original).

Plaintiff also argues that Michigan courts have recognized an exception to the general rule that all rights are extinguished after the redemption period. In *Manufacturers Hanover Mortgage Corp. v. Snell*, 142 Mich. App. 548 (1985), the court stated as follows:

> The Supreme Court has long held that the mortgagor may hold

7

> over after foreclosure by advertisement and test the validity of the
> sale in the summary proceeding. *Reid v. Rylander*, 270 Mich. 263,
> 267 (1935); *Gage v. Sanborn*, 106 Mich. 269, 279 (1895).
> Otherwise, the typical mortgagor who faces an invalid foreclosure
> would be without remedy, being without the financial means to
> pursue the alternate course of filing an independent action to
> restrain or set aside the sale. *Reid, supra*, 270 Mich. at 267. . . .
> The mortgagor may raise whatever defenses are available in a
> summary eviction proceeding.

*Id.* at 404.

However, even if Plaintiff has standing, his claim fails because he has not alleged a

sufficient irregularity to set aside the foreclosure sale. "Michigan courts have long held that

statutory foreclosures should not be set aside without very good reason . . . ." *United States v.*

*Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997). Plaintiff must show "a strong case of fraud or

irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Id.*

In *Jackson Investment Corporation v. Pittsfield Products, Inc.*, 162 Mich. App. 750

(1987), the court held that "a defect in notice renders a foreclosure sale voidable" but not

automatically void. *Id.* at 755. The court went on to state that a defect would not render a

foreclosure sale void "[i]n situations where it is evident that no harm was suffered, in that the

mortgagor would have been in no better position had notice been fully proper and the mortgagor

lost no potential opportunity to preserve some or any portion of his interest in the property . . . ."

*Id.*

In the instant case, Plaintiff has not demonstrated that he would have been in a better

position had notice been proper. Plaintiff admits that he was mailed a foreclosure notice several

weeks prior to the sheriff's sale. (Compl. ¶ 56.) Plaintiff was able to retain the property by

paying the redemption value. (Compl. ¶ 58.) Moreover, Plaintiff waited almost six months

8

before challenging the foreclosure sale, filing the instant case just a few days before the

expiration of the redemption period.  Thus, Plaintiff has failed to allege sufficient grounds to set

aside the foreclosure sale.  *See Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511

(E.D. Mich. 2004) (holding that "even if Defendant failed to comply with the foreclosure notice

statute, [the Court] would not have sufficient grounds to invalidate the foreclosure sale, because

of a lack of prejudice."); *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 503 (2007) (holding

that foreclosure sale could not be set aside due to lack of prejudice, where "[d]efendants were not

timely in challenging the validity of the foreclosure sale . . . .").  Plaintiff's claims to invalidate

the foreclosure sale will therefore be dismissed.

## B.  Plaintiff's Claims Arising Out of the HAMP Contract

Defendant is a participant in HAMP, a federal program that attempts to reduce home

foreclosures by providing financial incentives to mortgagees encouraging them to restructure

mortgages.  *See* Home Affordable Modification Program: Overview, (Sept. 16, 2011)

[https://www.hmpadmin.com/portal/programs/hamp.jsp].  To participate in the program,

Defendant has entered into a Service Provider Agreement ("SPA").  The SPA is between

Defendant and the Federal National Mortgage Association, or Fannie Mae.

Plaintiff argues that he is a third-party beneficiary of the SPA between Defendant and

Fannie Mae, citing *Marques v. Wells Fargo Home Mortgage Inc.*, No. 09-cv-1985-L(RBB), 2010

WL 3212131 (S.D. Cal., August 12, 2010) (unpublished).  However, courts in this District have

previously held that Plaintiff does not have a private right of action under HAMP.  *Hart v.

Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *see also Nafso v.

Wells Fargo Bank, N.A.*, No. 11-10478, 2011 WL 1575372, *4-5 (E.D. Mich., April 26, 2011)

9

(unpublished).

Plaintiff cites a recent amendment to Michigan's foreclosure statute, Mich. Comp. Laws §
600.3205a-c, arguing that the Michigan legislature has explicitly provided foreclosed individuals
with a cause of action based on HAMP. Specifically, § 600.3205c(7) requires that, where a
borrower is eligible for a loan modification, the mortgage holder may not proceed with a
foreclosure sale until it has offered the borrower a modification agreement, and the borrower has
not executed the agreement within 14 days of receipt. Further, § 600.3205c(8) provides:

> If a mortgage holder or mortgage service begins foreclosure
> proceedings under this chapter in violation of this section, the
> borrower may file an action . . . to convert the foreclosure
> proceeding to a judicial foreclosure. If a borrower files an action
> under this section and the court determines that the borrower
> participated in the process under section 3205b,[3] a modification
> agreement was not reached, and the borrower is eligible for
> modification . . . the court shall enjoin the foreclosure of the
> mortgage by advertisement and order that the foreclosure proceed
> under Chapter 31.

Mich. Comp. Laws § 600.3205c(8).

Plaintiff's claim under § 600.3205c fails. Plaintiff admits that Defendant did offer him a
loan modification, which he rejected. Plaintiff's argument that the offer was not reasonable
misses the mark. While Plaintiff alleges that the value of the property was only $15,500
according to Defendant's appraisal, Defendant was not obligated to modify Plaintiff's loan based
on that amount. The value of the property was clearly more than $15,500 to Plaintiff, who
valued it at $123,000 in his bankruptcy petition (Chp. 7 Voluntary Pet. 6, *In re Lessl*, No. 09-
68439, ECF 1), and who eventually paid $199,284.58 for the property at the foreclosure sale.

---

[3]Section 3205b provides guidelines for borrowers and housing counselors regarding
negotiations to modify the borrowers' mortgage loans.

Defendant, meanwhile, has an interest in minimizing its losses. A loan modification valued at significantly more than $15,500 was shrewd, perhaps, but not unreasonable.

Further, § 3205c requires Plaintiff to act prior to the foreclosure sale, "to convert the foreclosure proceeding to a judicial foreclosure." Mich. Comp. Laws § 3205c(8). The statute does not provide any authority to set aside a foreclosure sale after it has taken place. *Adams v. Wells Fargo Bank, N.A.*, No. 11-10150, 2011 WL 3500990, *4 (E.D. Mich., Aug. 10, 2011) (unpublished).

Accordingly, Plaintiff's claims based on HAMP will be dismissed.

## C. Claims for Misrepresentation and Promissory Estoppel

Defendant argues that Plaintiff's claims for misrepresentation and promissory estoppel are barred by Michigan's Statute of Frauds, which provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2). Plaintiff alleges that his claims satisfy the statute of frauds because they are based on the HAMP Request Defendant mailed him on June 17, 2010. The cover letter of the June 17, 2010 packet bears the signature of Darrell Neitzel, Defendant's Senior

11

Vice President.  However, assuming this document satisfies the statute of frauds, Plaintiff's claims for misrepresentation and promissory estoppel still must fail.

To bring a prima facie case of misrepresentation, Plaintiff must show that Defendant misrepresented a past or existing fact.  *Forge v. Smith*, 458 Mich. 198, 212 (1998).  "A promise regarding the future cannot form the basis of a misrepresentation claim."  *Id.*  Plaintiff alleges that the June 17, 2010 HAMP Request was an offer to make a good faith review of Plaintiff's home loan for modification.  (Compl. ¶ 91.)  It is clear, however, that the HAMP Request required further action on Plaintiff's behalf before a review could take place.  It was not, therefore, a misrepresentation of past or existing fact, and was at best a promise regarding future action.  Accordingly, Plaintiff's misrepresentation claim fails.  *See Hart*, 735 F. Supp. 2d at 749 (dismissing claim that "attempt[ed] to allege a claim based on a representation that Defendant would review Plaintiff's mortgage for modification with no intent to do so . . .").

Plaintiff's promissory estoppel claim also fails.  A prima facie case of promissory estoppel requires "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided."  *Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008).  Michigan courts apply the doctrine of promissory estoppel cautiously. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 376 (1993).  Plaintiff alleges that the June 17, 2010 HAMP Request was a promise to make a good faith review of Plaintiff's loan for a modification, and that his reliance on this alleged promise has harmed him "in that his property has been wrongfully foreclosed . . . ."  (Compl. ¶¶ 97 and 100.)

12

Plaintiff has not alleged sufficient facts showing that his alleged reliance on the June 17, 2010 HAMP Request was reasonable, or that there are circumstances requiring enforcement of the promise to avoid injustice. Plaintiff was offered a loan modification twice and declined the offer on both occasions. To the extent Plaintiff alleges that he relied on Defendant to complete its review of his finances before proceeding to a foreclosure sale, such reliance was not reasonable. As early as July 10, 2009, Plaintiff was informed that regardless of his requests for loan modification, "collection or/and foreclosure activity may continue until a foreclosure prevention treatment has been approved or completed . . . ." (Pl.'s Resp., Ex. 5, July 10, 2009 Letter 1.) On March 3, 2010, Defendant mailed Plaintiff a notice that his mortgage had been referred to a legal firm to begin foreclosure proceedings. (Pl.'s Resp., Ex. 6.) On June 22, 2010 – five days after the HAMP Request on which Plaintiff allegedly relied was mailed – Plaintiff was sent a letter stating: "we are proceeding to foreclosure." (Pl.'s Resp., Ex. 9.) Plaintiff also admits that he received a foreclosure notice. (Compl. ¶ 56.) The foreclosure notice is dated July 8, 2010, and states that a sheriff's sale was scheduled for August 6, 2010. (Pl.'s Resp., Ex. 10, Foreclosure Notice.) Furthermore, Plaintiff admits that he was not fully complying with Defendant's document requests because he believed certain portions of his bank statements were immaterial. (Compl. ¶ 53.) Plaintiff has thus failed to allege "circumstances requiring enforcement of the promise if injustice is to be avoided," *Zaremba Equipment, Inc.* 280 Mich. App. at 41, and his promissory estoppel claim fails as a matter of law.

## D. Real Estate Settlement Procedures Act Claim

Plaintiff alleges that his June 9, 2009 letter regarding his escrow balance constituted a qualified written request ("QWR") under RESPA. Under 12 U.S.C. § 2605(e)(1)(B), a QWR

13

enables the servicer to identify the name and account of the borrower, and includes a statement of

the reasons the borrower believes his account is in error. The servicer must acknowledge receipt

of a QWR within 20 business days and must substantively respond within 60 business days. 12

U.S.C. § 2605(e)(1)(A) and (e)(2). If a servicer fails to respond to a QWR, the borrower may

recover (1) actual damages suffered as a result of the failure, and (2) additional damages in the

case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1).

Defendant argues that Plaintiff has failed to allege any actual damages suffered as a result

of Defendant's failure to respond to the June 9, 2009 letter. "To successfully plead a RESPA

claim, Plaintiff must allege actual damages, which resulted from the . . . failure to respond to

Plaintiff's QWRs." *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich.

2010).

The Complaint simply states that "Plaintiff is entitled to his actual damages" due to

Defendant's failure to respond to his QWR. (Compl. ¶ 72.) This allegation is not sufficient to

survive Defendant's Motion to Dismiss.

In response, Plaintiff has requested leave to amend. Plaintiff has not attached to his

Response a proposed amended complaint, as required by Local Rule 15.1, nor has Plaintiff stated

any facts in his Response that show what actual damages he should be entitled to under RESPA.

The Court therefore finds that any amendment in this case would be futile and denies Plaintiff's

request to amend. *Perkins v. Amer. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir.

2009).

## V. CONCLUSION

For the reasons stated above, the Court will:

14

(1) **GRANT** Defendant's Motion to Dismiss, and

(2) **DISMISS** the action.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 9-16-11
   Detroit, Michigan

15